Affirming.
The official records of the appellant disclose that on September 10, 1923, the following resolution was duly adopted by it:
 "A resolution providing for the improvement of Capital avenue, Arlington avenue, and Third street, between Shelby street and Capital avenue, by oiling same. *Page 514 
 "Be it resolved by the common council of the city of Frankfort:
 "Section 1. That Capital avenue, beginning at Second street on the north, and extending the full length thereof to Todd street on the south, and Arlington avenue, beginning at Main street on the north, and extending the full length of its terminal, and Third street, beginning at the east side of Shelby street on the west, its full length thereof to the west side of Capital avenue on the east, be further improved by oiling the same; that the city shall provide the oil, and have it put on the streets under the supervision of the street committee, and the cost thereof shall be borne one-third by the abutting property owners on one side of said streets, one-third by the abutting property owners on the other side of said streets, and the other third, together with the intersections, to be paid by the city out of the street fund.
 "Section 2. When said work is done the street committee shall ascertain the cost, and cause the same to be apportioned as indicated by section 1, and the same certified, with the names of the parties owning property along said streets to the common council, and when said apportionment and certificate is approved by the council, said cost shall become due and payable to said city, and if not paid within thirty days, said cost shall become a lien upon said property and collected by 'petition in equity' filed in the circuit court of Franklin county.
 "Section 3. This resolution shall take effect and be in force from and after its passage."
Nothing further appears in these records with reference to the oiling of the streets mentioned in this resolution until December 24, 1923, when the following proceedings were had:
 "Special engineer Joseph Rosson filed his statement of oiling apportionments for the 1923 street oiling, certifying to same.
 "Councilman Glenn moved that the certificate of the special engineer be received and accepted, and the city clerk directed to proceed to collect the accounts due the city.
"Said motion was agreed to." *Page 515 
These are the only references in these official records concerning this work. From the parol evidence introduced on the trial of this case, we learn that pursuant to the resolution of September tenth the mayor and chairman of the street committee of the appellant, without any advertising or competitive bidding, entered into an agreement with the Kentucky Road Oil Company for the latter to spread over Capital avenue from Second to Todd streets in the city of Frankfort a preparation known as "Tarvia" and on top of this to put stone chips. The Company did this work under this verbal arrangement and under the supervision of the mayor and the chairman of the street committee. Although Capital avenue is ninety feet wide, the Tarvia was only spread over the center half of the street for a part of the distance and the center third of the street for the rest of the way, leaving its sides untouched. No report seems ever to have been made to the council when the work was completed, nor was it ever formally accepted by this body. After the statement of apportionment filed by Joseph Rosson had been approved by the city on December 24, 1923, it called upon those against whose property the apportionment ran to pay the same. The appellee having failed to pay the apportionment against her property, the city brought this suit to foreclose a lien it claims it has to secure such payment by virtue of section 3290-42 of the Kentucky Statutes. The lower court dismissed the petition and the city has appealed.
Section 3290-42 of the statutes reads:
 "That said cities of the third class are hereby empowered to further improve their streets by oiling the same. The several councils of said cities are hereby authorized and empowered to have such streets as they may deem necessary oiled, such streets to be designated by resolution of the common council; the city to provide the oil and have it put on the streets under the supervision of the city engineer or street inspector; and the cost thereof to be borne, one-third by the abutting property owners on one side of the street, one-third by the abutting property owners on the other side of the street, and the other third, together with the street intersections, to by paid by the city out of the street fund; provided, however, that on streets where there is a car line the city's part of the expense may be equally divided between the city and the railway company. *Page 516 
 "When said work is done the city engineer shall ascertain and apportion the costs as herein indicated and certify the same, with the names of the parties owning it, to the common council, and when the said report is approved by the council said costs shall become due and payable to said city and if not paid within thirty days, said costs shall become a lien upon said property and may be collected by a petition in equity filed in the circuit court of the county, and said court of equity is hereby empowered to enforce said lien and sell said property to satisfy said claim or claims."
This section of the statutes is chapter 53 of the Acts of 1914, and in the case of Henderson Traction Co. v. City of Henderson, 178 Ky. 124, 198 S.W. 730, was upheld as constitutional against the contention that as its title read: "An act to amend section 3290 in subdivision 2 of article IV, chapter 89, Kentucky Statutes, and providing for the oiling of streets in cities of the third class," it was defective because it contained only the proposed addition to section 3290 and did not re-enact the whole of section 3290 with its 41 subsections. We said that this act was complete in itself and was not an amendment or extension of section 3290 or any part thereof and did not require a reference to any other law to discover its scope or meaning. It will be noted that this act vests in the city council the power and authority to have the work done. Beyond specifying that the streets to be oiled must be designated by resolution, the act is silent as to how the council is to execute the power and authority thus vested in it. This being true, we must then turn to those sections of the statutes prescribing the method by which the city council must exercise such authority or power as is thus vested in it.
Section 3426 of the statutes provides for the creation of a board of public works in cities of the third class to which appellant belongs. This section, inter alia, says:
 "When no board of public works has been established, the duties herein imposed shall be performed by the common council, and such other employes and agents as said common council may elect or designate."
As the appellant has not established a board of public works, the duties imposed upon such board fall upon the common council. *Page 517 
Section 3438 provides that the board of public works shall have exclusive power and control over the construction, supervision, cleaning, sprinkling, repairing, grading and improving of all streets and public ways.
Section 3440 provides that such board when it deems it advisable to make a contract for the execution of any work or purchase of any supplies or material in any manner under its charge, shall cause to be made a careful estimate of the cost of such work or material, and if the estimated cost exceeds $500.00 the board shall transmit to the common council with its recommendations an ordinance authorizing the said expenditure with an estimate of the cost and upon the passage of the ordinance it is the duty of the board to advertise and let the contract to the lowest responsible bidder.
Section 3441 provides that all contracts of the board shall be in the name of the city and shall be executed on behalf of the city by the mayor and under the seal of the corporation, and attested by the city clerk, and filed with the records of the board.
Section 3444 provides that any contract made in violation of the foregoing provisions shall be void.
In the case of Moseley Hospital v. Hall, 207 Ky. 644,269 S.W. 1004, we held, construing these various sections, and especially section 3440, that under the commission form of government permissible for cities of the third class, the commissioners stood in the place of the common council and that as in the absence of a board of public works the duties imposed by the sections of the statutes above quoted fell upon the board of councilmen, it followed that the duty to advertise for bids after an ordinance authorizing an expenditure where the estimated cost of the proposed expenditure was in excess of $500.00 fell upon the commissioners. In the case before us the expenditure on Capital avenue was in excess of $500.00. It follows that the council in exercising the authority given it to have the streets oiled should have enacted an ordinance authorizing the expenditure, advertised for bids and then let the contract to the lowest responsible bidder. As it failed to do any of these things, it has not complied with the statutory requirements prerequisite to the acquisition of a lien. Cf. Wait v. Southern Oil Tar Co., 209 Ky. 682, 273 S.W. 473. The case of Henderson Traction Co. v. City of Henderson,supra, is not in conflict with these views, as appellant contends, because *Page 518 
in that case the only question presented for decision and decided was whether or not the act of 1914, now subsection 42 of section 3290 of the statutes, was constitutional.
As the lower court correctly dismissed appellant's petition, its judgment is affirmed.